# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

| | |
|---|---|
| TRAVIS DIALS, # 16243-171 | PETITIONER |
| VERSUS | CIVIL ACTION NO. 5:12cv54-DCB-RHW |
| ARCHIE LONGLEY, Warden | RESPONDENT |

## REPORT AND RECOMMENDATION

Before the Court is [1] Petitioner's April 23, 2012 Application for a Writ of Habeas Corpus pursuant to 18 U.S.C. §2241. Dials alleges prison officials violated his constitutional due process rights in prison disciplinary proceedings at the Federal Correctional Complex in Butner, North Carolina. Specifically, Dials alleges the officials improperly upgraded his charge of possessing a cell phone from a Code 305 possession of contraband to a more serious Code 108 hazardous tool violation, and failed to timely provide him a written copy of the sanctions imposed. Respondent's answer [8] to the petition urges that the petition should be denied because (1) Dials failed to exhaust his administrative remedies; (2) the disciplinary hearing complied with due process requirements; (3) there is sufficient evidence to support the disciplinary hearing officer's findings; and (4) the Bureau of Prison's designation of a cell phone as a hazardous tool is proper under the Administrative Procedure Act.

### Procedural History and Facts

Travis Dials is a federal prisoner presently incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi (FCC Yazoo City), serving a 78-month prison sentence imposed January 22, 2009 following his conviction in the U.S. District Court for the District of South Carolina for conspiracy to distribute and possess with intent to distribute cocaine and marijuana. The sentence also requires that Dials serve three years post-release supervision once

he is released from confinement. Dials' projected release date is October 21, 2014 via good conduct time release. [8-1]

The incident giving rise to the instant petition occurred February 18, 2011 while Dials was incarcerated at the Satellite Prison Camp at the Federal Correctional Complex in Butner, North Carolina. According to the incident report, at approximately 10:15 that night, corrections officer Harper entered the rear door of HW-Unit, and saw Dials lying in his bed talking on a cell phone. When Harper told Dials to give him the phone, Dials rolled over and dropped the phone on the floor behind his bed, then jumped down from his bunk and was pat-searched by Harper and removed from the unit. [8-3, p. 2] At 11:25 p.m. on February 18, 2011, Officer Harper signed incident report 2127205 which he had prepared charging Dials with a violation of Code 108, possession of a hazardous tool. The incident report was delivered to Dials at 9:35 the next morning. [8-3, p. 2] See also [8-2] Declaration of Jeffrey Tilley.

During the investigation, after acknowledging he understood his rights, Dials denied that he had a cell phone. When the incident was reviewed by the Unit Discipline Committee (UDC) on February 25, 2011, the UDC referred the matter to the Disciplinary Hearing Officer (DHO) due to the severity of the charge. The UDC recommended that Dials be sanctioned a loss of good conduct time, phone and visiting privileges and that he receive a disciplinary transfer. [8-3, p. 3] On February 25, 2011, Dials received notice of the hearing before the DHO and was advised of his rights at such hearing. [8-4], [8-5], [8-2, ¶7]

Jeffrey Tilley conducted the DHO hearing on May 11, 2011, with Dials and his staff representative in attendance. [8-2] Dials was upset and again denied having a cell phone, stating that "we needed to stay out of his business..." [8-6, p. 2] While Dials' three requested inmate witnesses were unavailable for the hearing,[1] their written statements were considered by the

---

[1] The inmate witnesses were located at another facility. [8-2, ¶8]

DHO, along with Officer Harper's incident report, Lt. Lawson's investigation, a memorandum from operations Lt. Reichardt; and a photograph of the cell phone found in Dials' cell. Based upon all the evidence, the DHO found Dials violated Code 108, possession of a hazardous tool. The DHO expressly found Dials' denial that he had a cell phone insufficient to excuse him from the offense, and that the statements from his witnesses that Dials had no phone and nothing was found when he was searched "did nothing to make [Dials'] denial more credible." The DHO gave greater weight to Officer Harper's account of the incident. [8-2, ¶9] The DHO imposed sanctions of disciplinary transfer, disallowance of 41 days good conduct time, 30 days disciplinary segregation and two years loss of telephone privileges, stating:

> Without question, cell phones provide inmates the opportunity to make calls that are both unmonitored and unknown to staff. In turn, what can be accomplished ranges from simply having extra phone minutes for what would be acceptable calls to arranging for the commission of other, more egregious prohibited acts such as the introduction of drugs, weapons, alcohol, or escape. The possibilities are endless and include even placing members of the general public at risk by contributing to or overseeing an almost endless variety of criminal activities in the community. In any scenario, the security and orderly operation of the institution is seriously jeopardized by an inmate's ability to make telephone calls to anyone and for any purpose without fear of detection or consequence.
> ***
> By possessing a cellular telephone, you not only disrupted the security and orderly operation of the institution, but created the potential for a larger disturbance to occur as well. In the past, cellular telephones have in fact been used in the commission of other prohibited acts and to further criminal activity. You also violated the trust given you as a camp inmate to conduct yourself in a highly responsible manner at all times. In addition to the recommended disciplinary transfer, disallowance of good conduct time and disciplinary segregation sanctions, the DHO imposed a loss of telephone privileges for this violation. The sanctions were imposed to impress upon you the seriousness of your behavior and to demonstrate that it cannot and will not be tolerated under any circumstance. While holding you solely responsible for your actions, the sanctions were also imposed to hopefully deter you from similar or other types of misconduct in the future.

[8-6, pp. 3-4], [8-2]

On July 11, 2011, Dials filed an appeal from the sanctions imposed at the May 11, 2011 hearing, but the appeal was rejected because Dials failed to attach a copy of the DHO report. Dials never re-filed the appeal and has submitted no additional requests for administrative remedy. [8-11, p. 3], [8-10, ¶8] Dials was transferred from FCC Butner on July 27, 2011, and ultimately designated to FCC Yazoo City on August 16, 2011. [8-8, p. 2], [8-7, ¶4]

When he arrived at FCC Yazoo City, Dials was assigned to Case Manager Katina Burch. In September 2011, after reviewing Dials' Inmate Central File and SENTRY records, Burch realized Dials' file did not contain a copy of the DHO Report for the May 11, 2011 DHO hearing at FCC Butner. Burch contacted personnel at FCC Butner for a copy of the report, which she received January 3, 2012. Burch provided Dials a copy of the report the same day. [8-7], [8-9]

<u>Law and Analysis</u>

Under the Prison Litigation Reform Act (PLRA) a prisoner must exhaust administrative remedies, and cannot bring unexhausted claims in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). The exhaustion requirement is not satisfied by "filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford*, 548 U.S. at 83-84. The PLRA requires that the prisoner "not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules." *Lane v. Harris Cty. Med. Dep't.*, 266 Fed.Appx. 85, 86, 2008 WL 116333 (5th Cir. 2008). "Exceptions to the exhaustion requirement apply only in 'extraordinary circumstances,'" and the prisoner bears the burden of demonstrating futility or unavailability of administrative review. *Schipke v. Van Buren*, 239 Fed.Appx. 85, 86 (5th Cir. 2007); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)(citations omitted). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence

– to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972).  An agency should be afforded the opportunity to correct its own errors before the aggrieved party seeks judicial resolution.  *See*, *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991).

The administrative remedy procedure applicable to DHO appeals provides that such appeals "be submitted initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2).  The appeal must be submitted within 20 days from the date the DHO decision is received.  If the appeal is not resolved by the Regional Director or the inmate is not satisfied with the result, the inmate can appeal the decision to the General Counsel for the Bureau of Prisons.  28 C.F.R. § 542.15.  Appeal to the General Counsel is the final step of the administrative process.  Dials attempted to appeal the DHO sanctions on July 11, 2011, but the appeal was rejected because he failed to attach a copy of the DHO report.  [8-11, p. 3], [8-10, ¶8]  Dials never re-filed the appeal or sought any further administrative review of the DHO decision.  His claim that he was not timely given a copy of the DHO report is to no avail, since Dials never pursued any administrative remedy after he admittedly received the DHO report.  No evidence indicates Dials has ever presented the issues raised in his habeas petition to the Bureau of Prisons, and the undersigned is of the opinion that the petition should be dismissed for failure to exhaust administrative remedies.

Disallowance of good conduct time which will result in extension of an inmate's confinement requires that the inmate be afforded due process.  *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Wolff* holds that due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker, and is given (1) at least 24 hours advance written notice of the charges; (2) an opportunity to present documentary evidence and testimony from witnesses; (3) help from other inmates or staff, if needed; and (4) a written statement of the

evidence relied on and the reason for the disciplinary action. *Id.*, 418 U.S. at 563-70. The record before the Court demonstrates that Dials was afforded the requisite due process during the disciplinary proceedings at issue. There is no record evidence of any partiality or bias on the part of the DHO Jeffrey Tilley; Dials received a copy of the incident report stating the charges against him on February 19, 2011 well over 24 hours before either the February 25, 2011 UDC review or the May 11, 2011 DHO hearing; he was provided a written copy of the DHO report setting out the evidence relied upon and the reasons for the sanctions imposed; he was afforded the opportunity to call witnesses and present documentary evidence (the DHO considered the written statements of Dials' inmate witnesses); and his request for a staff representative was honored and Brian Green appeared with him at the DHO hearing.

In *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445 (1985), the Supreme Court set out the constitutional evidentiary standard to be used in judicial review of prison disciplinary actions, holding due process is satisfied if there is "some evidence" to show that the inmate committed the offense. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*, 472 U.S. at 455-56; *see also*, *Smith v. Rabalais*, 659 F.3d 539, 545 (5th Cir. 1981)(" No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by 'some facts' 'whether any evidence at all' supports the action taken by prison officials.") The record before this Court contains evidentiary support for the DHO's decision.

Finally, Dials' contention that prison officials improperly upgraded his charge of possessing a cell phone from a Code 305 possession of contraband to a more serious Code 108 hazardous tool violation is belied by the record. From the outset, Dials has been charged with possession of a hazardous tool in violation of Code 108, as plainly stated in the incident report of

February 18, 2011. [8-3, p. 2] No evidence before the Court indicates Dials was ever charged with a Code 305 violation. Furthermore, he does not assert he was unaware that possession of a cell phone violated prison rules; in fact, when caught with the phone, rather than hand it over as Officer Harper instructed, he tried to conceal it by dropping it behind the bed. The undersigned is of the opinion that the Bureau of Prisons was within its authority to interpret its regulations to include cell phones within the designation of hazardous tools, and that doing so did not violate the notice and comment requirement of the Administrative Procedure Act.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Dials' petition for federal habeas relief be denied and his petition, dismissed.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen (14) days to serve and file written objections to the Report and Recommendation. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned District Judge. Within seven (7) days of service of the objection, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding

or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 10th day of January, 2013.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE